# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

DAVID J. MENDOZA,

    Plaintiff,

v.

PRECO, INC.,

    Defendant.

Case No. 17-2565-DDC-GEB

## MEMORANDUM AND ORDER

This matter is before the court on defendant Preco, Inc.'s Motion to Enforce Settlement. Doc. 36. Plaintiff David J. Mendoza, proceeding pro se, has not filed a Response, and the time for doing so has now passed. *See* D. Kan. Rule 6.1.

Under the court's local rules, when a party fails to respond, the motion ordinarily is viewed as an uncontested motion and is granted. D. Kan. Rule 7.4(b). But, the failure to file a response alone is an insufficient basis to enter judgment against a party. *Smith v. Via Christi & Assocs.*, No. 17-1270-JWB, 2018 WL 3008504, at *2 (D. Kan. June 15, 2018) (citing *Reed v. Nellcor Puritan Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002)). Instead, the court must determine whether a moving party's submission presents a legally sufficient basis to grant the motion. *Id.* (citing *Fields v. Corr. Corp. of Am.*, No. 04-6348, 2006 WL 991100, at *1 (10th Cir. Apr. 17, 2006)).[1]

---

[1] Although *Reed* and *Fields* present this rule in the context of a summary judgment motion, our court also has applied it to motions to enforce settlements. *See, e.g.*, *Via Christi & Assocs.*, No. 17-1270-JWB, 2018 WL 3008504, at *2 (D. Kan. June 15, 2018); *D-J Eng'g, Inc. v. 818 Aviation, Inc.*, No. 14-1033-JAR/JPO, 2015 WL 5155520, at *1 (D. Kan. Sept. 2, 2015).

So, although plaintiff did not respond, the court declines to rule on defendant's motion because it cannot discern whether plaintiff's counsel acted with actual authority when he entered the settlement agreement with defendant. The court thus directs defendant, if inclined, to coordinate with the court to schedule an evidentiary hearing about this question.

**I.     Facts**

Mr. Mendoza worked as a Shipping/Receiving clerk in Preco's office and warehouse in Lenexa, Kansas. In 2017, Mr. Mendoza filed a lawsuit against Preco, alleging civil rights violations based on Preco's purported racial discrimination, harassment, and retaliation during his employment. The uncontested facts[2] from defendant's Memorandum in Support of Motion to Enforce Settlement (Doc. 37) are as follows:

On May 29, 2018, plaintiff's counsel, Kirk Holman, left a voice mail for Preco's counsel, Robert Sheffield with a request for a return phone call. Mr. Sheffield returned Mr. Holman's phone call that day. During that call, Mr. Holman said he believed a dismissal of the case would be in everyone's best interest and asked if Preco would agree to a dismissal of the case without prejudice.

Mr. Sheffield sent Mr. Holman an email later in the day on May 29. This letter indicated that a dismissal without prejudice would not provide Preco with sufficient finality given the limitations period for some of plaintiff's claims and plaintiff's ability to re-file if he so chose. Mr. Sheffield continued:

> Therefore, I can confirm that Preco is willing to stipulate to a dismissal with prejudice, each party to bear its own costs. As part

---

[2]     The court has revised the facts slightly. In several instances, defendant refers to "plaintiff" accepting or revising the settlement agreement. In the court's view, the emails provided by defendant show that "plaintiff's counsel" accepted or revised the settlement agreement. As discussed below, to ensure that a legally sufficient basis to enforce defendant's motion exists, the court must consider whether plaintiff's former attorney had authority to agree to the settlement on plaintiff's behalf. In Kansas, "[a]n attorney has no authority to compromise or settle his client's claim without his client's approval." *Reimer v. Davis*, 580 P.2d 81, 85 (Kan. 1978).

2

> of the dismissal, Preco is willing to forgo filing any motions for sanctions related to your client's admitted perjury in exchange for a full waiver and release of all claims by your client. In other words – let's set this up for both parties to move on and put the case behind them for good. We would be happy to draw up an agreement reflecting these terms. Thanks, and please let me know.

Doc. 37-2 at 2–3. On May 30, 2018, plaintiff's counsel accepted Preco's May 29 settlement offer: "Well done, Robert. Please send over the Proposed Release."

On June 5, 2018, Mr. Sheffield sent an email to Mr. Holman, which included a draft Settlement Agreement and Release ("Agreement"), and a stipulation of dismissal with prejudice.

On June 12, 2018, Mr. Holman sent an email that contained revisions to Preco's June 5 draft Agreement. His revisions proposed edits to Paragraph A (Consideration) and also sought to make the non-disparagement provision in Paragraph G a mutual obligation.

On June 13, 2018, Mr. Sheffield responded to Mr. Holman, "Preco agrees to your changes to Paragraph A, but cannot agree to make non-disparagement mutual. So, we'll split the difference. Attached is the agreement accepting your changes to Paragraph A and restoring Preco's version of Paragraph G."

On June 15, 2018, Mr. Sheffield inquired about the status of plaintiff's signature of the Agreement. Mr. Holman responded to Mr. Sheffield the same day, "Not sure I can get him to agree to non-disparagement without some mutuality. I am trying."

On June 19, 2018, Mr. Sheffield again inquired about the status of plaintiff's signature of the Agreement. Mr. Holman responded to Mr. Sheffield on June 22: "Hope to have this signed this weekend."

On June 26, 2018, Mr. Holman left a voice mail for Mr. Sheffield in which he stated that the parties' settlement agreement did not include non-disparagement, but that Mr. Holman was doing his best to get plaintiff to sign the Agreement with the non-disparagement term included.

On July 2, 2018—in response to Mr. Holman's June 15 email and June 26 voice mail—Mr. Sheffield sent an email to Mr. Holman, which included a revised and final version of the Agreement. It didn't include the non-disparagement provision. Thus, the July 2 Agreement reflected and accepted all of plaintiff's counsel's edits from June 5, June 15, and June 26.

On July 9, 2018, Mr. Sheffield sent an email to Mr. Holman checking about the status of plaintiff's signature of the final Agreement. Mr. Holman responded the same day, "It's been sent to him for signature. We are both in trial this week. I am fine with filing the stipulation if you are fine doing so."

Mr. Sheffield waited to respond until the following week, after Mr. Holman's trial had concluded. On July 17, 2018, Mr. Sheffield responded to Mr. Holman: "Thanks, Kirk. Have you received the signed agreement from Mr. Mendoza? In any event, I agree with you about getting the dismissal filed. It is attached here. You have my approval to file."

Later in the day on July 17, 2018, Mr. Holman replied to Mr. Sheffield: "Sorry, Robert. Was in trial last week but learned Friday [i.e., July 13] that apparently, he now intends to sue me for malpractice and continue with the litigation against your client. I am going to file a Motion to Withdraw. We sent a courier out for him to sign and learned all of this."

## II. Legal Standard

District courts may "summarily enforce a settlement agreement" reached by the parties. *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993). Because settlement agreements are contracts, state contract law governs issues of formation, construction, and enforceability. *United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000).

Defendant presumes that Kansas contract law applies but does not present facts for the court to determine where the contract was made. *See In re K.M.H.*, 169 P.3d 1025, 1032 (Kan.

2007) ("A contract is made where the last act necessary for its formation occurs."). Failure to present facts sufficient to determine where the contract is made may justify a default to forum law." *Id.* (quoting *Layne Christensen Co. v. Zurich Canada*, 38 P.3d 757 (Kan. Ct. App. 2002)); *Mendy v. AAA Ins.*, No. 17-2322-DDC-GLR, 2017 WL 4422648, at *6 (D. Kan. Oct. 5, 2017). In Kansas, "'the law of the forum applies unless it is expressly shown that a different law governs, and in case of doubt, the law of the forum is preferred.'" *Mendy*, 2017 WL 4422648, at *6 (quoting *Brenner v. Oppenheimer & Co., Inc.*, 44 P.3d 364, 376 (Kan. 2002)) (further citation omitted). The court will default to Kansas law as the forum state.

"'It is an elemental rule that [Kansas] law favors compromise and settlement of disputes, and generally, in the absence of bad faith or fraud, when parties enter into an agreement settling and adjusting a dispute, neither party is permitted to repudiate it.'" *Earthmovers, Inc. v. Massey*, 07-4134-SAC, 2008 WL 1924938, at *1–2 (D. Kan. Apr. 30, 2008) (quoting *Krantz v. Univ. of Kan.*, 21 P.3d 561, 567 (Kan. 2001)). And, under Kansas law, a settlement agreement is enforceable if there has been a meeting of the minds on all essential terms and the parties intend to be bound. *Terracon Consultants, Inc. v. Drash*, No. 2:12-CV-2345-EFM, 2013 WL 6080429, at *6 (D. Kan. Nov. 19, 2013).

## III. Discussion

The court first must address whether plaintiff authorized his attorney authority to enter into a settlement agreement. Defendant argues that "[o]rdinarily, a party who knowingly and voluntarily authorizes the settlement of her claims cannot avoid the terms of the settlement simply because she changes her mind." *Woods v. Denver Dep't of Rev., Treasury Div.*, 45 F.3d 377, 378 (10th Cir. 1995) (citing *Worthy v. McKesson Corp.*, 756 F.2d 1370, 1373 (8th Cir. 1985)). Of course, this argument presupposes that plaintiff had authorized the settlement in the

5

first place.  To ensure that a legally sufficient basis to enforce defendant's motion exists, the court applies Kansas law governing an attorney's authority to enter settlement agreements.

Kansas contract law defines an attorney's power to settle a case narrowly.  "'The Supreme Court of Kansas has held that an attorney has no actual authority to compromise or settle his client's claim without his client's approval.'"  *Cardozo v. Home Depot U.S.A., Inc.*, No. 10-2011-JWL, 2011 WL 839685, at *2 (citing *Reimer v. Davis*, 580 P.2d 81, 85 (Kan. 1978)); *cf. Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir. 2004) (recognizing and applying, under Colorado state law, a "presumption that an attorney has express authority to settle unless there is evidence to the contrary in the record" (citing *Thomas v. Colo. Trust Deed Funds, Inc.*, 366 F.2d 136, 139 (10th Cir. 1966))).  "While a client may be bound by her attorney's appearance, admissions, and other actions on her behalf, '[t]hat rule is limited, however, to control over procedural matters incident to the litigation.'"  *Rojo v. IBP, Inc.*, No. 03-3300, 2005 WL 2697253, at *3 (10th Cir. Oct. 21, 2005) (quoting *Reimer*, 580 P.2d at 85).  So, while some states presume that attorneys have the authority to settle their clients' cases, Kansas requires actual evidence of that authority.

Defendant's motion never establishes that plaintiff's counsel had actual authority to settle plaintiff's claim.  Indeed, defendant's filings never address the question.  And, the court has no evidence—based on the exhibits provided by defendant—that will permit it to find that Mr. Mendoza gave his counsel that authority.  For example, defendant contends that plaintiff agreed to the material terms of the settlement offer when plaintiff's counsel emailed, "Well done, Robert.  Please send over the Proposed Release."  But, the court requires at least a minimal showing that this offer was accepted on Mr. Mendoza's behalf and with his authority.  *See Pierce v. PrimeRevenue, Inc.*, No. 17-2233-JWB, 2018 WL 4749331, at *1 (D. Kan. Oct. 2, 2018)

6

(finding attorney had actual authority to settle when uncontroverted e-mail from plaintiff's attorney stated "Jim: On behalf of [client] Terry Pierce, I confirm that this is agreeable.").

Also, showing merely that plaintiff's attorney negotiated the settlement agreement with defendant does not fulfill the requisite of actual authority. "[I]t is well settled that merely employing an attorney to litigate and negotiate a claim does not give that attorney apparent authority to settle the case." *Cardozo*, 2011 WL 839685, at *2 (citing *Miotk v. Rudy*, 605 P.2d 587, 591 (Kan. Ct. App. 1980)). Again, defendant directs the court to e-mail exchanges and phone calls between defendant's counsel and plaintiff's counsel. But, "apparent agency is based on words or acts of the principal toward third parties—not words or acts of the agent." *Id.* (citing *Mohr v. State Bank of Stanley*, 734 P.2d 1071, 1075 (Kan. 1987)). Here, defendant's motion lacks any indication that Mr. Mendoza communicated with defendant's counsel at all; so, the court lacks any basis to infer that plaintiff's counsel acted with apparent authority.

Thus, "only if the plaintiff has bestowed actual authority upon his attorney, either expressly or in some other manner recognized by law, to settle the plaintiff's claims against the defendant will the alleged settlement agreement at issue be binding upon plaintiff." *Mulvaney v. St. Louis Sw. Ry. Co.*, Civ. A. No. 91-2386-L, 1992 WL 223771, at *2 (D. Kan. Aug. 13, 1992). Whether plaintiff's attorney had such authority is an issue of fact that the court cannot decide based on the current record. The court thus declines to rule on defendant's Motion to Enforce Settlement (Doc. 36). If defendant wishes to proceed on its motion, it must contact Deputy Clerk Megan Garrett at KSD_Crabtree_Chambers@ksd.uscourts.gov to schedule an evidentiary hearing and present any evidence it contends to show that plaintiff conferred actual authority on his counsel to settle the case.

**IT IS THEREFORE ORDERED THAT** defendant may contact Deputy Clerk Megan Garrett to schedule an evidentiary hearing on its Motion to Enforce Settlement (Doc. 36).

**IT IS SO ORDERED.**

**Dated this 20th day of December, 2018, at Kansas City, Kansas.**

<u>**s/ Daniel D. Crabtree**</u>
**Daniel D. Crabtree**
**United States District Judge**