# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

DAVID J. MENDOZA,

    Plaintiff,

v.

PRECO, INC.,

    Defendant.

Case No. 17-2565-DDC-GEB

## MEMORANDUM AND ORDER

This matter comes before the court on defendant Preco, Inc.'s Renewed Motion to Enforce Settlement Agreement (Doc. 46). Pro se plaintiff David J. Mendoza has not filed a Response, and the time for doing so has passed. *See* D. Kan. Rule 6.1.[1] Preco's motion requested an evidentiary hearing to present evidence on one aspect of its motion—*i.e.*, on whether Mr. Mendoza conferred authority to his former counsel to settle his claims. The court conducted an evidentiary hearing on this issue on May 8, 2019. Preco's motion also requested that—if the court concluded the parties had entered an enforceable settlement agreement—the court enter a fee award against Mr. Mendoza. On review of Preco's papers and the facts in evidence, the court grants Preco's motion in part and denies it in part. The court holds the parties

---

[1]     Under the court's local rules, when a party fails to respond, the motion ordinarily is viewed as an uncontested motion and is granted. D. Kan. Rule 7.4(b). But, the failure to file a response alone is an insufficient basis to enter judgment against a party. *Smith v. Via Christi & Assocs.*, No. 17-1270-JWB, 2018 WL 3008504, at *2 (D. Kan. June 15, 2018) (citing *Reed v. Nellcor Puritan Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002)). Instead, the court must determine whether a moving party's submission presents a legally sufficient basis to grant the motion. *Id.* (citing *Fields v. Corr. Corp. of Am.*, No. 04-6348, 2006 WL 991100, at *1 (10th Cir. Apr. 17, 2006)). Although *Reed* and *Fields* present this rule in the context of a summary judgment motion, our court also has applied it to motions to enforce settlements. *See, e.g.*, *Via Christi & Assocs.*, 2018 WL 3008504, at *2; *D-J Eng'g, Inc. v. 818 Aviation, Inc.*, No. 14-1033-JAR/JPO, 2015 WL 5155520, at *1 (D. Kan. Sept. 2, 2015).

entered an enforceable settlement agreement on May 30, 2018, but the court declines to enter a fee award against Mr. Mendoza. The court explains the reasons for its decision, below.

**I.    Facts**

The court bases the following findings of fact based on matters established by the filings on this motion, as well as evidence presented at the evidentiary hearing.

    **A.    Mr. Mendoza's Lawsuit and Preco's First Motion to Enforce Settlement (Doc. 36)**

Mr. Mendoza worked as a Shipping/Receiving clerk in Preco's office and warehouse in Lenexa, Kansas. In September 2017, Mr. Mendoza filed a lawsuit against Preco, alleging civil rights violations based on Preco's purported racial discrimination, harassment, and retaliation during his employment. Doc. 1. Preco filed an Answer. Doc. 5. And, the parties began discovery, which included Preco taking Mr. Mendoza's deposition. *See, e.g.*, Docs. 17, 21, & 25. Preco's motion asserts Mr. Mendoza admitted to committing perjury twice during his deposition on May 23, 2018. Doc. 25; Doc. 47 at 2–3 n.1. Preco's motion contends Mr. Mendoza did not disclose his wife's last name and address in response to Preco's interrogatories. *Id.* And, Preco alleges, Mr. Mendoza testified that he left a later job voluntarily when, in reality, Mr. Mendoza was fired from that position. *Id.*

On May 29, 2018, Mr. Mendoza's counsel, Kirk Holman, left a voicemail for Preco's counsel, Robert Sheffield, with a request for a return phone call. Doc. 47-2 at 2. Mr. Sheffield returned Mr. Holman's phone call that day. *Id.* During that call, Mr. Holman said he believed dismissing Mr. Mendoza's case would be in everyone's best interest and asked Mr. Sheffield if Preco would agree to a dismissal of the case without prejudice. *Id.*

Later that day, Mr. Sheffield sent Mr. Holman an email. Doc. 47-3 at 1–2. Mr. Sheffield's email indicated that dismissal without prejudice would not provide Preco with

2

sufficient finality given the limitations period for some of Mr. Mendoza's claims and his ability to re-file if he so chose. *Id.* Mr. Sheffield continued:

> Therefore, I can confirm that Preco is willing to stipulate to a dismissal <u>with</u> prejudice, each party to bear its own costs. As part of the dismissal, Preco is willing to forgo filing any motions for sanctions related to your client's admitted perjury in exchange for a full waiver and release of all claims by your client. In other words – let's set this up for both parties to move on and put the case behind them for good. We would be happy to draw up an agreement reflecting these terms. Thanks, and please let me know.

*Id.* On May 30, 2018, Mr. Holman replied in an email, "Well done, Robert. Please send over the Proposed Release." *Id.* at 1.

In June 2018, the parties exchanged draft settlement agreements. And, on July 2, 2018, Mr. Sheffield sent Mr. Holman a final agreement. Doc. 47-11 at 3. On July 9, 2018, Mr. Sheffield sent an email to Mr. Holman checking whether plaintiff had signed the agreement. *Id.* Mr. Holman responded the same day, "It's been sent to him for signature. We are both in trial this week. I am fine with filing the stipulation if you are fine doing so." *Id.* at 2.

Mr. Sheffield waited to respond until the following week, after Mr. Holman's trial had concluded. On July 17, 2018, Mr. Sheffield responded to Mr. Holman: "Thanks, Kirk. Have you received the signed agreement from Mr. Mendoza? In any event, I agree with you about getting the dismissal filed. It is attached here. You have my approval to file." *Id.*

Later in the day on July 17, 2018, Mr. Holman replied to Mr. Sheffield: "Sorry, Robert. Was in trial last week but learned Friday [*i.e.*, July 13] that apparently, he now intends to sue me for malpractice and continue with the litigation against your client. I am going to file a Motion to Withdraw. We sent a courier out for him to sign and learned all of this." *Id.* In context, it is evident that the "he" in Mr. Holman's July 17 email referred to Mr. Mendoza.

Mr. Mendoza's attorneys—including Mr. Holman—withdrew from their representation shortly after defendant served its Motion to Enforce Settlement on July 27, 2018. *See* Doc. 38 (Motion to Withdraw); Doc. 39 (Order granting Motion to Withdraw). Mr. Mendoza has proceeded pro se since then.

Mr. Mendoza filed no response to Preco's motion after the court extended his deadline. *See* Doc. 43. The court thus ruled on Preco's Motion to Enforce Settlement Agreement. In its December 20, 2018, Memorandum and Order, the court held that it could not grant Preco's motion. Doc. 44. In short, the court could not discern whether Mr. Holman—Mr. Mendoza's former attorney—had acted with actual or apparent authority when he entered into the settlement agreement with Preco. Doc. 44. The court thus directed Preco to contact the court to schedule an evidentiary hearing to demonstrate that Mr. Mendoza had conferred authority on his counsel to settle the case.

### B. Preco's Renewed Motion to Enforce Settlement (Doc. 46) and Evidentiary Hearing on Mr. Holman's Actual Authority

On March 7, 2019, Preco filed a Renewed Motion to Enforce Settlement Agreement (Doc. 46) and requested an evidentiary hearing on the narrow issue whether Mr. Mendoza conferred Mr. Holman with authority to settle the case. Mr. Mendoza did not respond to defendant's proposed hearing dates. Doc. 48. So, on April 17, 2019, the court set an evidentiary hearing for three weeks later: May 8, 2019, at 9:00 a.m. *Id.* The court sent Mr. Mendoza a copy of the Order (Doc. 48) about the hearing date both by regular and certified mail. *Id.* Preco sought to move the hearing date (Doc. 49), and Preco's counsel sent Mr. Mendoza an email about the original hearing date and the proposed new dates. But, the court denied Preco's motion, and the court mailed Mr. Mendoza a copy of the Order (Doc. 50) stating that the hearing would proceed as scheduled on May 8, 2019, at 9:00 a.m.

At 7:33 a.m. on May 8, the court's Deputy Clerk received an ex parte message from Mr. Mendoza's email account. This email asserted that Mr. Mendoza would not attend the hearing because he could not leave work. The court shared a copy of the email with defense counsel at the hearing. And, the court liberally construed the email as a motion to continue the hearing. But, the court denied the motion because Mr. Mendoza had sufficient notice of the hearing. And, the court concluded, Mr. Mendoza could have filed a proper motion to continue well before the hearing rather than send the Deputy Clerk an email less than two hours before the hearing.

The court permitted Preco to present evidence on the actual authority issue. Preco called Mr. Holman—Mr. Mendoza's previous attorney—to testify. The court's findings of fact based on Mr. Holman's testimony are as follows:

- In a call between Mr. Sheffield and Mr. Holman on May 29, 2018, Mr. Holman offered that the case should be dismissed without prejudice and that each party should bear its own costs.

- Later that day, Mr. Holman received an email from Mr. Sheffield. The email proposed Mr. Mendoza would dismiss his claims with prejudice and Preco would forego pursuing sanctions against Mr. Mendoza for purported perjury during discovery in exchange for Mr. Mendoza's full waiver and release. Also, each party would bear its own costs.

- Mr. Holman communicated with Mr. Mendoza about Preco's offer before he sent Mr. Sheffield an email on May 30, 2018. Mr. Mendoza authorized Mr. Holman to accept the offer from Preco.

- On May 30, 2018, Mr. Holman sent Mr. Sheffield an email stating "Well done, Robert. Please send over the Proposed Release." Mr. Holman testified that this email indicated his acceptance of Mr. Sheffield's offer proposed in the May 29, 2018, email.

## II.  Legal Standard

District courts may "summarily enforce a settlement agreement" reached by the parties. *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993). Because settlement agreements are contracts, state contract law governs issues of formation, construction, and enforceability. *United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000). In Kansas, "'the law of the

forum applies unless it is expressly shown that a different law governs, and in case of doubt, the law of the forum is preferred.'" *Mendy v. AAA Ins.*, No. 17-2322-DDC-GLR, 2017 WL 4422648, at *6 (D. Kan. Oct. 5, 2017) (quoting *Brenner v. Oppenheimer & Co.*, 44 P.3d 364, 376 (Kan. 2002)) (further citation omitted). Preco contends Kansas law applies, and Mr. Mendoza has made no showing in opposition. Also, the court concludes the parties have not presented sufficient facts for the court to determine the choice of law question independently. The court thus defaults to applying Kansas law.

"'It is an elemental rule that [Kansas] law favors compromise and settlement of disputes, and generally, in the absence of bad faith or fraud, when parties enter into an agreement settling and adjusting a dispute, neither party is permitted to repudiate it.'" *Earthmovers, Inc. v. Massey*, 07-4134-SAC, 2008 WL 1924938, at *1–2 (D. Kan. Apr. 30, 2008) (quoting *Krantz v. Univ. of Kan.*, 21 P.3d 561, 567 (Kan. 2001)). And, under Kansas law, a settlement agreement is enforceable if the parties have a meeting of the minds on all essential terms and intend to bind themselves with the agreement. *Terracon Consultants, Inc. v. Drash*, No. 2:12-CV-2345-EFM, 2013 WL 6080429, at *6 (D. Kan. Nov. 19, 2013). Whether a contract was formed is an objective test rather than a subjective one. *Murphey v. Mid-Century Ins. Co.*, No. 13-2598-JAR-JPO, 2014 WL 2619073, at *4 (D. Kan. June 12, 2014) (citing *Sw. & Assocs., Inc. v. Steven Enters., LLC*, 88 P.3d 1246, 1249 (Kan. Ct. App. 2004)).

Parties may create an enforceable settlement agreement by email. "Contract negotiations by e-mail have become ubiquitous," and parties may enter binding settlement agreement "'by informal letters or e-mails.'" *Murphey*, 2014 WL 2619073, at *4 (quoting *O'Neill v. Herrington*, 317 P.3d 139, 146 (Kan. Ct. App. 2014)). Although agreements reached by email may be informal, "'the fact that the parties contemplate the subsequent execution of a formal instrument

as evidence of their agreement does not necessarily imply they have not already bound themselves to a definite and enforceable contract.'" *Terracon Consultants*, 2013 WL 6080429, at *6 (quoting *Phillips & Easton Supply Co. v. Eleanor Int'l, Inc.*, 512 P.2d 379, 384 (Kan. 1973)).

Of course, these legal principles presuppose that an attorney negotiating a settlement on a client's behalf has authority to bind the client to the agreement. And, in Kansas, "'an attorney has no actual authority to compromise or settle his client's claim without his client's approval.'" *Cardozo v. Home Depot U.S.A., Inc.*, No. 10-2011-JWL, 2011 WL 839685, at *2 (citing *Reimer v. Davis*, 580 P.2d 81, 85 (Kan. 1978)). "While a client may be bound by her attorney's appearance, admissions, and other actions on her behalf, '[t]hat rule is limited, however, to control over procedural matters incident to the litigation.'" *Rojo v. IBP, Inc.*, No. 03-3300, 2005 WL 2697253, at *3 (10th Cir. Oct. 21, 2005) (quoting *Reimer*, 580 P.2d at 85); *see also Mulvaney v. St. Louis Sw. Ry. Co.*, Civ. A. No. 91-2386-L, 1992 WL 223771, at *2 (D. Kan. Aug. 13, 1992) ("[O]nly if the plaintiff has bestowed actual authority upon his attorney, either expressly or in some other manner recognized by law, to settle the plaintiff's claims against the defendant will the alleged settlement agreement at issue be binding upon plaintiff.").

## III. Discussion

The court declined to rule on Preco's original Motion to Enforce Settlement Agreement (Doc. 36) because it could not discern whether Mr. Mendoza had given Mr. Holman authority to settle his claim. After the May 8, 2019, evidentiary hearing, the court revisits this question on Preco's Renewed Motion to Enforce Settlement Agreement (Doc. 46). And the court now grants Preco's motion because it concludes (1) Mr. Mendoza gave Mr. Holman actual authority to settle his claim, and (2) the parties entered a binding settlement agreement on May 30, 2018. Given

these conclusions, the court also limits the agreement's scope to the express terms found in Mr. Sheffield's May 29 offer—that is, the court enforces no terms included in later proposed settlement agreements.

*First*, the court holds that Mr. Holman had actual authority to enter the settlement agreement on Mr. Mendoza's behalf. "The authority of an actual agent may be express 'if the principal has delegated authority to the agent by words which expressly authorize the agent to do a delegable act.'" *Rojo*, 2005 WL 2697253, at *4 (quoting *Mohr v. State Bank of Stanley*, 734 P.2d 1071, 1075 (Kan. 1987)). At the hearing, Mr. Holman testified that he discussed the terms of Preco's proposed offer with Mr. Mendoza between May 29—when Mr. Holman received the offer—and May 30—when Mr. Holman accepted the offer. Critically, Mr. Holman testified, Mr. Mendoza expressly authorized him to accept the terms contained in Mr. Sheffield's May 29 email: Mr. Mendoza would dismiss his claims with prejudice; Preco would not pursue sanctions against Mr. Mendoza in exchange for Mr. Mendoza's full waiver and release; and each party would bear its own costs. In short, Mr. Holman's testimony provided the missing piece in this case: it established that Mr. Mendoza had conferred actual authority to his attorney to settle his claims.

*Second*, having addressed the actual authority question, the court also concludes the parties reached an enforceable settlement agreement over email on May 30. A settlement agreement is enforceable if there has been a meeting of the minds on all essential terms and the parties intend to be bound. *Terracon Consultants*, 2013 WL 6080429, at *6. The court concludes the parties have satisfied these elements. Mr. Sheffield testified that his May 29 email reflected the essential elements of Preco's counteroffer. And, Mr. Holman testified that he understood the email to contain an offer under those terms. Mr. Holman also testified that his

May 30 email—"Well done, Robert. Please send over the proposed release"—constituted an acceptance of Mr. Sheffield's counteroffer, an acceptance Mr. Mendoza expressly had authorized. Determining whether a contract was formed is an objective test, and the court concludes that Mr. Sheffield and Mr. Holman's email communications objectively displayed an outward expression of assent to contract. Because the parties reached an enforceable settlement agreement authorized by Mr. Mendoza, the agreement's essential terms thus bind Mr. Mendoza.

*Third*, although Preco included several versions of unsigned agreements containing additional terms, including a purported "final agreement" on July 2, the court enforces only the settlement terms contained in Mr. Sheffield's May 29 email. *See* Doc. 47-4, 47-5, 47-6. Evidence of subsequent agreements does not preclude a determination that the parties reached an enforceable settlement agreement on May 30. "'[T]he fact that the parties contemplate the subsequent execution of a formal instrument as evidence of their agreement does not necessarily imply they have not already bound themselves to a definite and enforceable contract.'" *Terracon Consultants*, 2013 WL 6080429, at *6 (quoting *Phillips & Easton Supply Co.*, 512 P.2d at 384). The court has concluded that the parties bound themselves to a definitive and enforceable contract on May 30. And, the back-and-forth between the parties about revised agreements does not affect this outcome. Absent mutual assent to the additional terms—which includes a showing that Mr. Mendoza conferred actual authority on Mr. Holman to agree to the additional terms—the terms contained in Mr. Sheffield's May 29 email govern the agreement. Preco has failed to establish that Mr. Mendoza authorized his attorney to accept these additional terms.

## IV. Request for Fees

Preco's motion also asks the court to award Preco the fees it incurred when preparing its original and renewed motions to enforce the settlement agreement. Docs. 36, 46. Preco's

9

motion contends that Mr. Mendoza acted in bad faith and abused the judicial process because the parties reached unambiguous agreements on May 30 and July 2.

"It has long been understood that 'certain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which *cannot be dispensed with* in a Court, because they are necessary to the exercise of all others.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *United States v. Hudson*, 11 U.S. 32 (1812)) (emphasis added) (internal brackets omitted); *see also Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1255 (10th Cir. 2015). And, "[a]mong these *indefeasible* powers is a court's 'ability to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Farmer*, 791 F.3d at 1255 (quoting *Chambers*, 501 U.S. at 44–45). The court may fashion an appropriate sanction by imposing attorney's fees for a party's bad-faith misconduct during the litigation. *See id.* (citing *Chambers*, 501 U.S. at 53).

The court, in its discretion, denies Preco's request to levy a fee award on Mr. Mendoza for three reasons. First, the court directed Preco to file its renewed motion because the court could not determine—based on Preco's original motion—whether Mr. Mendoza had conferred actual authority on his attorney to settle his claim. So, the renewed motion and evidentiary hearing resulted from an ambiguity in Preco's motion. Second, contrary to Preco's motion, Mr. Mendoza never formally repudiated the agreement. In fact, although Mr. Mendoza has sent several ex parte email messages to the Deputy Clerk, he has filed no responses to Preco's motions to enforce settlement, nor did he appear at the evidentiary hearing to dispute the settlement agreement. Third, as discussed in Section III, the court concluded that Mr. Mendoza conferred his attorney with actual authority to settle his claim on May 30 and the parties entered a binding settlement agreement at that time. But, the court did not conclude that the parties

10

reached a second enforceable agreement on July 2.  So, had Mr. Mendoza objected to Preco's position, the court would not have found Mr. Mendoza's position wholly meritless.  For these reasons, the court denies Preco's request for fees.

V.      **Conclusion**

For the reasons explained, the court grants Preco's Renewed Motion to Enforce Settlement Agreement (Doc. 46) in part and denies it in part.  The court holds the parties entered an enforceable settlement agreement on May 30, 2018, but the court declines to enter a fee award against Mr. Mendoza.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Preco's Renewed Motion to Enforce Settlement Agreement (Doc. 46) is granted in part and denied in part.  The court holds the parties entered an enforceable settlement agreement on May 30, 2018, but the court declines to enter a fee award against Mr. Mendoza.

**IT IS FURTHER ORDERED THAT** the court dismisses Mr. Mendoza's claims with prejudice under the binding settlement agreement reached by the parties.  This resolves all claims in the case, and the court thus directs the Clerk to close this case.

**IT IS SO ORDERED.**

**Dated this 17th day of May, 2019, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**